## JOHN S. FOGG *versus* EZRA T. SANBORN & al.

By reason of c. 82, § 44, of the R. S., no action can be maintained upon a demand which has been entrusted to an attorney for collection and by him discharged for any consideration however small.

The assignment of such demand does not affect the discharge, unless the attorney's authority is revoked by the assignee *before* the discharge.

Where a negotiable note has been given in settlement of an account, and a judgment has been afterwards obtained upon the account and discharged by one duly authorized, for any valuable consideration, no action can be maintained by the original creditor either upon the note or the judgment.

ON REPORT.

The material facts in the case appear in the argument of counsel and the opinion of the Court.

*G. W. Dyer,* for plaintiff. .

1. The plaintiff makes out a *prima facie* case. ·

· 2. The defence is, that, before the suit, Nickerson, who had been employed as an attorney to collect the debt, settled it for *thirty per cent.,* and gave discharges.

It is incumbent upon the defendants to show that the de-

mands in suit "had been entrusted to Nickerson for collection or settlement," and that Nickerson was acting as the attorney for the owners of the demands in suit at the date of the (so called) discharges.

Have the defendants done this?

The note *never was* entrusted to Nickerson for collection or settlement. Nickerson *never* had the note.

Mrs. Burbank was the owner of the demands in suit at the date of the (so called) discharges.

Nickerson says that he had no authority to compromise, except what was contained in Fogg & Burbank's letter of November 13, 1852; so, that he had no authority from Mrs. Burbank or Manning.

If any authority, whether general or special, had been given to Nickerson by Fogg & Burbank, or by Fogg, in the name of Fogg & Burbank, that authority came to an end, February 22d, 1854, by the assignment to Mrs. Burbank, who then became owner.

Nickerson had notice before the date of the (so called) discharges, that the claim in his hands had been assigned to Mrs. Burbank, as matter of fact. As matter of law it makes no difference whether he had notice or not.

Nickerson does not pretend to act as the attorney of Mrs. Burbank; he refers to the letter of Fogg & Burbank of Nov. 13, 1852, as his only authority, and signs the (so called) discharges as attorney for Fogg & Burbank.

The discharge, or release of Sanborn, should have been pleaded to the action of Fogg & Burbank, as defendants, as this discharge, or release, was prior to the rendition of judgment in that suit, and it was not legally admissible in the case at bar. *Thacher & als.* v. *Gammon,* 12 Mass., 868, affirmed in *Footman* v. *Stetson,* 32 Maine, 17; *Bird* v. *Smith,* 34 Maine, 68.

Neither the writing to Sanborn, or that to Moody, avoids or discharges the judgment, neither instrument being under seal. *Sewall & al.* v. *Sparrow,* 16 Mass., 26; *McAllister & al.* v. *Sprague & al.,* 34 Maine, 296.

*E. B. Harvey*, for defendants.

The opinion of the Court was drawn up by

CUTTING, J.——This is an action of debt, upon a note•signed by the defendants, payable to the order of Fogg & Burbank, in six months from June 3d, 1852, for the sum of $314,62. And, also, upon a judgment recovered by Fogg & Burbank against the defendants, for $368,10, debt, and $34,65, costs, at the October term, 1855, of the Supreme Judicial Court for the county of Waldo.

In defence it appeared, that the original account, for which the note was given, was enclosed in a letter to an attorney residing in Waldo county, for collection. The letter was introduced and reads thus:——

"Boston, 13th Nov., 1852.——F. S. Nickerson, Esq.——Dear Sir,——Enclosed we hand you the amount of our demand against Messrs. Sanborn & Moody, which was made into a note June 3d, six months, for three hundred fourteen dollars and sixty-two cents, and *is now in* one of the banks in this city. If necessary, we will get the note and forward to you. Should you see a probability of obtaining something on the claim, we would like to have the effort made; but, if otherwise, should say——let there be as little expense as possible.

"Fogg & Burbank by C. Ward."

It further appeared, that *Nickerson* brought the suit on the account and recovered the judgment now set forth in the plaintiff's writ. That subsequently, on March 31, 1855, he, as the attorney of record, upon the payment of twenty per cent., discharged *Sanborn*, and, on December 10th, of the same year, on payment of ten per cent., discharged *Moody* from all claim by virtue of the judgment and executions issued thereon. This the attorney was authorized to do by virtue of the statute of 1851, c. 213, § 1, then in force, and since continued in the revision of 1857, c. 82, § 44, which provides that——

"No action shall be maintained on a demand settled by a creditor, or his attorney entrusted to collect it, in full dis-

charge of it, by the receipt of money or other valuable con-
sideration, however small."

But, it is contended by the plaintiff's counsel that the judg-
ment was not founded upon the note, but upon the account,
which was discharged by the note. It appearing that the note
was negotiable, the defendants in the former suit might have
availed themselves of such fact in defence to that suit on the
original account, subject, however, to an amendment in the
discretion of the Court, by adding the money counts, under
which the note would have been admissible as evidence. How-
ever that may have been, it is neither legal nor equitable for
the present plaintiff of record, who ordered the process and
recovered the judgment, now to invoke such a technicality, and
at the same time rely upon his judgment, when, in fact, the note
and account were both entrusted to the attorney's care, or,
at least, subject to his control; for, as stated in the letter, "*if
necessary, we will get the note and forward to you.*"

It is again urged, by the plaintiff's counsel, that *Burbank*
died in June, 1852, and, on Feb. 22d, 1854, *Fogg*, as surviv-
ing partner, transferred his interest in the note to the widow
of his deceased partner, and that *William Manning*, as her
agent, had certain correspondence with the attorney in relation
to the demand, and, it is contended, from the evidence thus
introduced, that the attorney's authority was terminated or
exceeded. But, upon an examination of the testimony touch-
ing this point, which is to be found in the depositions of *Nick-
erson* and *Manning*, and letters and documents annexed, we
find the proposition not to be sustained. *Manning* never
countermanded any authority previously conferred on the at-
torney by the letter enclosing the original demand, or wrote
him upon the subject, until Nov. 13, 1856, which was long
after the payment and discharge of the judgment, and excuses
himself for such neglect by stating that he thought it unneces-
sary, so long as he held the note in his own hands.

Had the note been negotiated to a *bona fide* holder, for
a valuable consideration, before its maturity, such an excuse
might have been entertained. But the facts were far other-

Wallace *v.* Columbia.

wise, and the present plaintiff in interest must share the same fate as the plaintiff of record, which is—

*Plaintiff nonsuit.*

RICE, APPLETON, DAVIS and KENT, JJ., concurred.